IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MICHAEL HOOPER,

        Plaintiff,

v.                                                   CIV. NO. 14-449 JCH/GBW

CAROLYN W. COLVIN, *Acting*
*Commissioner of the Social Security*
*Administration*,

        Defendant.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

This matter comes before me on Plaintiff's Motion and Memorandum to Reverse or Remand the Social Security Administration's (SSA) decision to deny Plaintiff disability insurance benefits. *Docs. 23, 24.* For the reasons discussed below, I recommend that the Court GRANT Plaintiff's motion and REMAND this action to the Commissioner for further proceedings consistent with this opinion.

### I.    PROCEDURAL HISTORY

Plaintiff filed for Title II Social Security Disability Insurance Benefits and Title XVI Supplemental Security Income in June 2010, alleging disability which began on December 31, 2008. Administrative Record ("AR") at 145-53. Plaintiff appeared and testified at a hearing conducted by video teleconference before Administrative Law Judge (ALJ) Ann Farris on August 8, 2012. AR at 45-61. Vocational expert (VE) Leslie J.

1

White also attended the hearing, as well as Plaintiff's counsel, Justin Raines.  AR at 29, 45.

ALJ Farris issued an unfavorable decision on August 28, 2012.  AR at 26.  Relying on the testimony of the VE, the ALJ determined that Plaintiff was not disabled because, although severe impairments prevented him from engaging in past relevant work, Plaintiff could still perform other jobs which existed in significant numbers in the local and national economy.  AR at 31-38.  On November 1, 2012, Plaintiff appealed the ALJ's decision to the SSA Appeals Council, alleging errors of law and fact and claiming that the decision was not supported by substantial evidence in the record.  AR at 25.  On March 21, 2014, the Appeals Council denied Plaintiff's request for review, finding that the information presented "[did] not provide a basis for changing the Administrative Law Judge's decision" and denied Plaintiff's appeal.  AR at 1-2.

## II.   STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), a court may review a final decision of the Commissioner only to determine whether it (1) is supported by "substantial evidence," and (2) comports with the proper legal standards.  *Casias v. Sec'y of Health & Human Serv.*, 933 F.2d 799, 800-01 (10th Cir. 1991).  "In reviewing the ALJ's decision, we neither reweigh the evidence nor substitute our judgment for that of the agency."  *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (internal quotation marks omitted).

Substantial evidence is "more than a mere scintilla.  It means such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." *Casias,*

933 F.3d at 800. "The record must demonstrate that the ALJ considered all of the

evidence, but an ALJ is not required to discuss every piece of evidence." *Clifton v. Chater,*

79 F.3d 1007, 1009-10 (10th Cir. 1996). "[I]n addition to discussing the evidence

supporting his decision, the ALJ must also discuss the uncontroverted evidence he

chooses not to rely upon, as well as significantly probative evidence he rejects." *Id.* at

1010. "The possibility of drawing two inconsistent conclusions from the evidence does

not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue,*

489 F.3d 1080, 1084 (10th Cir. 2007).

III.   FACTUAL BACKGROUND

Plaintiff is a forty-year-old male who filed for disability on the basis of his

recurring symptoms of anxiety and panic, heartburn, chest pain, and shortness of breath.

*See* AR at 55-57, 262-64, 275. Mr. Hooper claims that these symptoms began in 2007-08

and became more severe over time, necessitating both emergency intervention and

ongoing treatment. AR at 50-55. He further claims that, in addition to serious bouts of

daily anxiety, his required medication causes involuntary twitching and fatigue. *Id.* at 51-

61.

In evaluating these claims, the ALJ found that Mr. Hooper had severe impairments

of anxiety, somatoform disorder, factitious disorder, and personality disorder. *See* AR at

31; *doc. 24* at 11-12. The parties agree that the conclusions regarding Mr. Hooper's

personal impairments are not in dispute.  *Doc. 31* at 2.  Accordingly, the undersigned will

discuss only those parts of the testimony and subsequent decision relevant to the present

dispute.

During the hearing, the ALJ called upon the VE to provide testimony regarding

the number of jobs available in the local and national economy which Plaintiff could

perform, given his impairments.  AR at 61-62.  When presented with a hypothetical

mirroring Plaintiff's own limitations, the VE provided three specific jobs, identified by

their Dictionary of Occupational Titles (DOT) codes, which a person with Plaintiff's

impairments could perform.  AR at 63-65 (identifying small products assembler, 706.684-

022 SVP-2, clerical warehouse checker, 222.687-010, and duct maker, 809.687-010).  She

then provided the numbers of available jobs in the national and regional economies for

three broad categories of jobs (known collectively as "occupations"), with each including

one of the three DOT titles she previously identified.  *See* AR at 64-66 (identifying 135,000

national jobs and 900 state jobs available for the category of production workers, which

includes the job of small products assembler; identifying 68,000 national jobs and 300

state jobs available for the category of weighers, measurers and checkers, which includes,

as one of 33 occupational titles, the job of clerical warehouse checker; identifying 14,000

national jobs and 500 state jobs available for the category of cutters and hand trimmers,

which includes, as one of 98 occupational titles, the job of duct maker).  However, the VE

was unable to provide the numbers of jobs available in the local or national economy for

the specific DOT titles identified. AR at 65-66. Based on these responses, Plaintiff

objected to any use or reliance on the figures provided by the VE on the basis that they

did not correspond to any of the identified jobs. AR at 66-67, 70.

IV. THE ALJ'S DECISION

On August 28, 2012, the ALJ issued a decision denying Plaintiff's application for

benefits. AR at 29-39. For purposes of Social Security disability insurance benefits, an

individual is disabled when he or she is unable "to engage in any substantial gainful

activity by reason of any medically determinable physical or mental impairment which

can be expected to result in death or which has lasted or can be expected to last for a

continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine

whether a person satisfies these criteria, the SSA has developed a five-step test. *See* 20

C.F.R. § 404.1520. If the ALJ finds an individual disabled at one step, the next step is not

taken. *Id*. § 404.1520(a)(4).

At the first four steps of the analysis, claimants have the burden to show that: (1)

they are not engaged in "substantial gainful activity"; that (2) they have a "severe

medically determinable . . . impairment . . . or a combination of impairments" that has

lasted or is expected to last for at least one year; and that either (3) their impairment(s)

meet or equal one of the "Listings" of presumptively disabling impairments; or (4) they

are unable to perform his "past relevant work." 416.920(a)(4)(i–iv); *Grogan v. Barnhart*,

399 F.3d 1257, 1261 (10th Cir. 2005). If the ALJ determines that a claimant has a severe

impairment or combination of impairments such that they cannot engage in past relevant work, the ALJ will proceed to step five of the evaluation process.  At step five, the burden of proof shifts to the Commissioner to show the claimant is able to perform other work in the national economy, considering his residual functional capacity, age, education, and work experience.  *Grogan*, 399 F.3d at 1257.

In determining that Plaintiff was not entitled to benefits, the ALJ in this case applied the sequential five-step analysis as required by Social Security Administration (SSA) regulations.  20 C.F.R. §§ 404.1520, 416.920.  At step one of the sequential analysis, she found that Mr. Hooper did not perform any substantial gainful activity since his alleged onset date, December 31, 2008.  AR at 31.  At step two, the ALJ found that Mr. Hooper had the severe impairments of anxiety, somatoform disorder, factitious disorder, and personality disorder.  AR at 31.  In evaluating the third step, the ALJ concluded that Mr. Hooper's impairments did not meet or medically equal the severity of a listing from the Listing of Impairments contained in 20 C.F.R. Part 404, Subpart P, Appendix 1.  AR at 32.

For purposes of evaluating steps four and five, the ALJ held that Mr. Hooper retained the residual functional capacity (RFC) to perform work at all exertional levels, subject to the following non-exertional limitations: (1) he cannot engage in employment which "require[s] driving as part of the job"; (2) he is capable of only occasional interaction with the public; and (3) he can perform "no work around crowds."  AR at 33.

In light of these limitations, the ALJ determined at step four that Mr. Hooper could not perform any past relevant work, thereby shifting the burden to the Commissioner to present evidence that jobs Plaintiff could perform exist in significant numbers in the regional or national economy.  AR. at 36-37.  Of greatest import, the ALJ at step five relied on the VE's testimony to support her finding that jobs which Mr. Hooper can perform exist in significant numbers in the national economy.  *See* AR at 37.  In response to Mr. Hooper's objections that the VE failed to state how many jobs existed for any of the specific DOT occupational titles she identified, the ALJ asserted that a group or category of multiple DOT occupational titles may be used for the purpose of determining the numbers of appropriate jobs available.  AR at 38.

## V.   ANALYSIS

Plaintiff argues that the ALJ erred at step five of the sequential analysis by relying on the number of jobs attributable to three broad groups of occupations rather than the numbers attributable to the specific DOT occupational titles identified by the VE.  *Doc. 24* at 13.  For the following reasons, I recommend holding that the ALJ erred because the ALJ's findings regarding the number of jobs potentially available to Plaintiff are not supported by substantial evidence.  Thus, I recommend remanding this action to the Commissioner for further proceedings consistent with this opinion.

A.  **Standards Governing Step Five of the Analysis**

Where the claimant demonstrates that they cannot perform any past work, "the ALJ bears the burden at step five to show that there are jobs in the regional or national economies that the claimant can perform with the limitations the ALJ has found him to have.  It is not the claimant's burden to produce or develop vocational evidence at step five." *Haddock v. Apfel*, 196 F.3d 1084, 1088 (10th Cir. 1999) (internal citations omitted). In order to satisfy this burden, the Tenth Circuit has explained that:

> the ALJ must cite examples of occupations or jobs the individual can do and provide a statement of the incidence of such work in the region where the individual lives or in several regions of the country.  The requirement to identify specific jobs the claimant can perform with the limitations the ALJ has found him to have also pertains when the ALJ finds that the claimant has acquired skills which will transfer to other work, as in this case.  Identified jobs must be shown to exist in significant numbers in the regional or national economies.

*Id.* (internal citations and quotation marks omitted).  In other words, there must be "substantial evidence" regarding (i) the jobs that a claimant can perform given the RFC, and (ii) the numbers of such jobs in the economy.

B.  **Methods of Proof**

Plaintiff interprets these requirements to mean that, in determining whether jobs exist in significant numbers, the ALJ must identify specific jobs by their applicable DOT code and elicit testimony from the VE about the number of those specific jobs in the economy. *Doc. 24* at 13-17.  According to Plaintiff, the ALJ may not rely on the number of jobs in a broad occupational category, even where a VE has provided an example of a

specific occupational title within that category. *Id.* at 16-18. By contrast, the SSA asserts

that step five is always satisfied where the vocational expert provides three concrete

examples of specific jobs, identified by their DOT codes, and testifies about the number

of jobs available in the broad categories within which those jobs fall. *Doc. 31* at 5-7. The

undersigned rejects both rigid approaches.

The law regarding the sufficiency of using categories within the ALJ's step five

analysis is far from settled nationally, and the SSA's assertion that an ALJ may rely on

the number of jobs within general categories rather than specific occupational listings

has found support in some jurisdictions. *See, e.g, Pena v. Comm'r of Soc. Sec.*, 489 F.

App'x 401, 402 (11th Cir. 2012); *Lara v. Astrue*, 305 F. App'x 324, 326 (9th Cir. 2008); *Hall*

*v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988). Unfortunately, the Tenth Circuit Court of

Appeals is yet to explicitly rule on the matter. Nonetheless, the Tenth Circuit has been

critical of the use of broad job categories instead of VE testimony regarding specific

DOT jobs identified by DOT codes. *See Carpenter v. Astrue*, 537 F.3d 1264, 1270-71 (10th

Cir. 2008). In *Carpenter*, in the "step five" testimony, the VE only "identified categories

of jobs rather than [any] specific jobs in the Dictionary of Occupational Titles (DOT),

and neither the ALJ nor the VE considered all of the requirements of any particular job."

*Id*. at 1270. As such, the court feared that ALJ could not determine if there were any

conflicts between the RFC and a particular job that the VE was claiming could be

performed by the claimant. *Id*. at 1270-71. The court "noted for consideration on

remand" that such could constitute error because the "ALJ is obligated to explain

conflicts between a VE's testimony and a job description in the DOT." *Id*.  Based on

*Carpenter*, some courts have required the ALJ and VE utilize specific DOT job positions

rather than broad categories in the step five analysis.  *See Parker v. Astrue*, No. CIV-09-

424-F, 2010 WL 1490056, at *5 (W.D. Okla. Mar. 22, 2010) *report and recommendation*

*adopted*, No. CIV-09-424-F, 2010 WL 1490062 (W.D. Okla. Apr. 13, 2010) ("Because the

ALJ in the present case relied on the VE's identification of categories of jobs instead of

specific DOT jobs at step five of the sequential procedure, remand is required.");

*Wheeler v. Colvin*, No. CIV-12-0793-F, 2013 WL 2924893, at *5 (W.D. Okla. June 13, 2013)

(specifically rejecting the SSA's argument that "the ALJ could satisfy the step five

burden by relying on categories of jobs without specifying particular jobs in the DOT,

so long as at least one job in that category could have matched the claimant's RFC for

work"); *but see Peisley v. Astrue*, 2010 WL 455182 at *4-*5 (W.D. Okla. Jan. 22,

2010)(finding sufficient evidence to satisfy the ALJ's step five burden based on VE

testimony regarding broad job categories).

The undersigned does not read *Carpenter* to establish an inflexible rule requiring

all calculations about the availability of jobs to be done based on specific DOT job codes.

Rather, in each case, the court must determine if the ALJ has demonstrated by

"substantial evidence" that there are jobs that a claimant can perform given the RFC,

and that those jobs exist in significant numbers in the economy.  Of course, this burden

can be met by (i) identifying specific jobs by DOT code; (ii) confirming that those jobs

can be performed by the claimant; and (iii) establishing that those specific jobs exist in

significant numbers.  However, that approach is not the only method.

Within the DOT, specific jobs are grouped into "occupations" based on their

similarities, and the "term 'occupation' as used in the DOT, refers to this collective

description of a number of individual jobs performed with minor variations in many

establishments." *The Dictionary of Occupational Titles*, Parts of Occupational Definition,

Department of Labor (4th ed. Rev. 1991).  Given the general similarities of jobs within a

DOT occupation (or category), establishing that a claimant with the determined RFC

can perform one job in the occupation is some evidence that the claimant can do the

other jobs within the occupation.  Indeed, such was the logic of the VE and ALJ in this

case.  However, for this approach to constitute "substantial evidence" adequate to

support findings in step five, an ALJ must take an additional step or steps.  The ALJ

must consider whether the "minor variations" within the occupation mean that the

occupation includes jobs which would conflict with the RFC finding.  *Cf. McFarlene v.*

*SSA*, No. CIV 14-0147 MV/GBW, Doc. 30 at 3 (D.N.M. March 10, 2015) (Step five

findings not adequately supported where "[a]lthough the VE testified that these three

DOT titles were 'representative' of other jobs Plaintiff could perform, she never testified

that Plaintiff could, in fact, perform all similar jobs in the larger group given his RFC.")

*report and recommendation adopted* No. CIV 14-0147 MV/GBW, Doc. 32 (D.N.M. March 27,

2015).  If it does, the ALJ must determine, usually through the VE, approximately how

many jobs within the category would be unable to be performed by the claimant.  *See,*

*e.g, Pena v. Comm'r of Soc. Sec.*, 489 F. App'x 401, 402 (11th Cir. 2012) (court upholds step

five finding where "VE testified that Pena could physically perform the jobs within the

categories of sorter and semi-conductor assembler. But in testifying to the number of

such jobs available, the VE reduced his estimate of the total number of jobs to account

for Pena's limited grasp of English.").  This calculation need not be done with a high

level of statistical specificity.  *Id*.  "In fact, the Social Security regulations clearly provide

that a VE's knowledge and expertise may supply a reasoned basis for his conclusions."

*Id*. (citations omitted).  In the end, there need only be "substantial evidence" that jobs

which can be performed by the claimant exist in the economy in significant numbers.

*See Evans v. Chater*, 55 F.3d 530, 532 (10th Cir. 1995).

C.  **Application to Instant Case**

      With that understanding, the undersigned turns to the instant case.  As noted

above, the VE provided three specific jobs, identified by their DOT titles, which Plaintiff

could perform.  AR at 64-65.  Rather than providing figures for the jobs identified, the

VE listed only the numbers of available jobs in the national and regional economies for

three broad categories of jobs (occupations) in which each of the three DOT titles

identified was an example.  *See* AR at 64-66.  When prompted by the ALJ, the VE

initially stated her belief that all jobs within the categories for which she had provided

figures fit within the hypothetical of Plaintiff's limitations and that the jobs specifically

identified were representative of that fact.  *See* AR at 67-68.  However, upon cross-

examination, the VE conceded that she could not say how many of these jobs would

require Plaintiff to work around crowds of people, a limitation explicitly presented in

the ALJ's hypothetical.  AR at 68-70.  Based on this uncertainty, the VE admitted that

she could not approximate with any degree of specificity what percentage of jobs within

the presented categories Plaintiff could perform, given that his impairments foreclose

employment involving exposure to crowds.  AR at 69-70.  In light of these concessions,

Plaintiff correctly pointed out that the SSA was unable to meet its burden under step

five, as it had provided no usable data regarding the availability of jobs which Plaintiff

could perform.  AR at 70.  As Plaintiff argued, because the VE's testimony had

produced no figures corresponding to his RFC, any determination regarding whether or

not a significant number of suitable jobs existed would constitute a blind guess.  AR at

67.

In her decision finding that Plaintiff was not disabled, the ALJ nonetheless relied

on the VE's testimony of numbers available in each occupational category.  AR at 37-38.

The ALJ dismissed any concern of deficiencies in the VE's testimony as moot, explaining

that her hypothetical mirroring Plaintiff's impairments was limited to his potential

interaction with the public, rather than his general exposure to large numbers of people.

AR at 38.  This assertion is plainly refuted by examination of the record.  First the ALJ's

own determination states that Plaintiff is limited to "jobs with occasional interaction with

the public" and "no work around crowds."  AR at 33.  Second, the transcript reveals that,

in describing her hypothetical to the VE, the ALJ presented the limitation of interaction

with the public as separate from the limitation regarding crowds.  AR at 63 (ALJ asking

the VE to "[a]ssume a person of the same age, education and work history as the claimant

. . . [c]an have occasional interaction with the public, but no requirement to work around

crowds").  Finally, in specifically contrasting the types of jobs which limit interaction with

the public to those which create minimal exposure to large crowds of people, including

co-workers, Plaintiff's counsel received explicit confirmation from the ALJ that the

hypothetical concerned exposure to crowds, rather than simply exposure to the public.

*See* AR at 68-69.

Accordingly, I find that the VE's testimony did not establish the prevalence of any

job in the regional or national economy which she could confirm satisfied the conditions

of the hypothetical mirroring Plaintiff's limitations.  As such, the ALJ's reliance on the

numbers provided by the VE constituted clear error and her step five findings are not

supported by substantial evidence in the record.

## VI.   CONCLUSION

Plaintiff has demonstrated that the ALJ erred in her step five analysis of whether

jobs which Plaintiff can perform exist in significant numbers in the regional and national

economies.  Therefore, I recommend that the Court GRANT Plaintiff's Motion to Reverse

or Remand, and remand this case to the Commissioner for further proceedings consistent

with this opinion.

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of
a copy of these Proposed Findings and Recommended Disposition they may file written
objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party
must file any objections with the Clerk of the District Court within the fourteen-day
period if that party wants to have appellate review of the proposed findings and
recommended disposition.  If no objections are filed, no appellate review will be
allowed.**